Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| YAZMÍN MARGARITA CRESPO<br><br>Apelados<br><br>v.<br><br>FRANCISCO DE LA CRUZ LÓPEZ<br><br>Apelante | KLAN202400037 | *Certiorari,* acogido como Apelación procedente del Tribunal de Primera Instancia, Sala de Superior de Caguas<br><br>Caso Núm. EDI2015-0676<br><br>Sobre:<br>Divorcio |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de febrero de 2024.

## I.

El 8 de enero de 2024, el señor Francisco De La Cruz López (señor De La Cruz López o apelante) presentó un escrito que tituló *Certiorari* en el que solicitó que revoquemos una *Resolución sobre Pensión Alimentaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro recurrido) el 23 de agosto de 2023, notificada y archivada en autos el 25 de agosto de 2023.[1] En el dictamen, el TPI acogió un *Informe de Pensión Alimentaria*[2] rendido por la Examinadora de Pensiones Alimentarias (EPA) el 22 de agosto de 2023 y fijó la pensión alimentaria que el apelante debería pagar a favor de un menor de 13 años, hijo de las partes. En suma, ordenó al apelante pagar $1,154.75 mensuales directamente a la señora Yazmín Margarita Crespo Claudio (señora Crespo Claudio o apelada), madre custodia del menor. Además, resolvió que

---

[1] Apéndice del recurso, Anejo V, págs. 9-10.
[2] Íd., págs. 11-15.

desde el 3 de marzo de 2021 al 31 de julio de 2023 el apelante debe haber pagado $33,487.75 por concepto de pensión alimentaria retroactiva, condicionado a que se acredite cualquier aportación que haya realizado durante el referido intervalo de tiempo.

El 11 de enero de 2024, emitimos una *Resolución* en la que resolvimos que el recurso adecuado era una apelación y no una petición de *Certiorari,* toda vez que el señor De La Cruz López solicita la revisión de un dictamen que modificó una pensión alimentaria, lo cual constituye propiamente una sentencia de la cual se puede apelar. Por tal razón, le ordenamos a la Secretaría del Tribunal de Apelaciones que asignara el alfanumérico correspondiente a una apelación. En cumplimiento de esa orden, le fue asignado el número KLAN202300037. En adición, le concedimos a la parte apelada hasta el 7 de febrero de 2024 para presentar su alegato en oposición.

El 7 de febrero de 2024, la señora Crespo Claudio presentó una *Oposición a apelación* en la que solicitó que confirmemos la *Resolución sobre Pensión Alimentaria* apelada.

El 14 de febrero de 2024, la señora Crespo Claudio radicó una *Moción solicitando desestimación por incumplimiento* en la que solicitó que desestimáramos la apelación porque el señor De La Cruz López le notificó el recurso el 9 de enero de 2024, expirado el término que tenía para presentarlo ante esta Curia. Según arguyó, ese actuar violentó la Regla 15 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 15.

El 15 de febrero de 2024, emitimos una *Resolución* en la que le concedimos al señor De La Cruz López hasta el 20 de febrero de 2024 para exponer su posición sobre la *Moción solicitando desestimación por incumplimiento.*

Transcurrido el término concedido al apelante para que se expresara sobre la desestimación solicitada por la señora Crespo

Claudio sin que lo hiciera, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos atinentes a la apelación.

**II.**

El caso de marras tiene su génesis el 13 de julio de 2015 cuando la señora Crespo Claudio presentó una petición de divorcio ante el TPI.[3]

A partir de la *Sentencia* que declaró el divorcio entre las partes, emitida por el TPI el 23 de julio de 2015, notificada y archivada en autos el 25 de agosto de 2015, el trámite procesal subsiguiente se concentró en asuntos de custodia, patria potestad y alimentos.[4]

El 3 de marzo de 2021, la señora Crespo Claudio radicó una *Moción solicitando orden y revisión de pensión alimentaria* en la que solicitó, entre otras cosas, que el caso fuera referido a la EPA para dilucidar la pensión alimentaria necesaria para el sustento del menor.[5] Posteriormente, el asunto quedó referido a la EPA, la cual señaló vista para el 1 de septiembre de 2021.

El 1 de septiembre de 2021, la EPA celebró una vista sobre revisión de pensión alimentaria, producto de la cual emitió un *Informe de Pensión Alimentaria* ese mismo día, reducido a escrito el 7 de septiembre de 2021 y firmado el 15 de septiembre de 2021.[6] En ese informe, la EPA concluyó que correspondía la fijación de una pensión alimentaria provisional de $399.00 mensuales. Recomendó, también, que se le impusiera al apelante el pago del 50% de los gastos escolares del menor, teniendo la madre cinco (5) días para notificar el gasto y el padre cinco (5) días posteriores para efectuar

---

[3] Este hecho, así como la mayoría de los incidentes procesales de este caso, surgen de la página cibernética del Poder Judicial, no del recurso presentado por el apelante, puesto que no incluyó referencia a ello en el escrito, ni documentación que los acreditará en el Apéndice. https://www.poderjudicial.pr/index.php/consulta-de-casos/. Tomamos conocimiento judicial de ello al amparo de la Regla 201 de Evidencia, 32 LPRA Ap. VI, R. 201.
[4] Íd.
[5] Apéndice de la *Oposición a Apelación*, Anejo I, págs. 1-2.
[6] Apéndice de la apelación, Anejo IV, págs. 6-7.

el reembolso. Según consignó el escrito, la EPA contaba con la Planilla de Información Personal y Económica (PIPE) de la señora Crespo Claudio, presentada por la apelada ese mismo día,[7] pero no con la del apelante.

El 16 de septiembre de 2021, el TPI emitió una *Resolución* en la que acogió el *Informe de Pensión Alimentaria* y ordenó al señor De La Cruz López pagar $399 mensuales por concepto de pensión alimentaria provisional.[8] A su vez, señaló una vista de revisión de pensión alimentaria a celebrarse el 29 de noviembre de 2021, además, para examinar la cuantía de la deuda retroactiva que le correspondía pagar al apelante. También, adoptó las demás recomendaciones de la EPA en cuanto a los gastos escolares y le concedió un término de cinco (5) días al apelante para presentar su PIPE.

El 1 de octubre de 2021, el señor De La Cruz López presentó su PIPE.[9]

El 22 de noviembre de 2021, la señora Crespo Claudio radicó una *Moción sometiendo evidencia adicional para vista de pensión alimentaria* en la que presentó varios documentos para acreditar su ingreso.[10] Entre ellos, incluyó una carta de la universidad en la que cursa estudios doctorales con un desglose de las becas recibidas, su planilla y una tabla resumiendo los gastos del menor.

El 29 de noviembre de 2021, la EPA celebró una vista sobre pensión alimentaria, cuyas incidencias quedaron recogidas en un *Acta de vista*, emitida el 29 de noviembre de 2021, reducida a escrito el 31 de enero de 2022 y firmada el 2 de febrero de 2022.[11] En la vista, se discutieron asuntos del descubrimiento de prueba. Además, la EPA recomendó la imposición de honorarios de abogado

---

[7] Apéndice de la *Oposición a Apelación*, Anejo II, págs. 3-9.
[8] Apéndice de la apelación, Anejo IV, págs. 4-8.
[9] Apéndice de la *Oposición a Apelación*, Anejo IV, págs. 11-15.
[10] Íd., Anejo V, págs. 16-19.
[11] Íd., Anejo VI, págs. 22-23.

a favor de la parte alimentista y la calendarización de una vista de revisión de pensión alimentaria el 16 de febrero de 2022.

El 3 de febrero de 2022, el TPI emitió una *Resolución* en la que acogió las recomendaciones de la EPA y, por consiguiente, fijó los honorarios y señaló la vista, según sugirió la EPA.[12]

El 11 de febrero de 2022, ambas partes presentaron una *Moción solicitando reseñalamiento de vista* en la que solicitaron que el TPI recalendarizara la vista del 16 de febrero de 2022 a una fecha posterior.[13]

El 16 de febrero de 2022, la EPA llevó a cabo la vista de revisión de pensión alimentaria, pero contó únicamente con la comparecencia de la señora Crespo Claudio. Las incidencias de esta quedaron recogidas en un *Acta* emitida el 16 de febrero de 2022, reducida a escrito y firmada el 24 de marzo de 2022.[14] La EPA recalendarizó la vista de revisión de pensión alimentaria, pautándola para el 18 de mayo de 2022.

El 5 de abril de 2022, la señora Crespo Claudio radicó una *Moción solicitando que no se tomen becas como ingresos* en la que expresó que, a partir de ese año, no contaría con los ingresos que había recibido de la universidad durante los tres años anteriores.[15] Según alegó, no debían considerarse como ingreso los fondos provenientes de estipendios regulares, de verano y suplementario, ni una beca, debido a que la apelada no podía contar con ella como sustento. En consecuencia, solicitó a la EPA que excluyera esas partidas del cálculo de su ingreso.

El 9 de mayo de 2022, el señor De La Cruz López presentó una *Réplica a moción de 5 de abril de 2022* en la que alegó que el ingreso real de la apelada era cercano a $70,000, la suma de las cifras

---

[12] Íd., Anejo VI, pág. 21
[13] Íd., Anejo VII, pág. 24.
[14] Íd., Anejo VIII, págs. 26.
[15] Apéndice de la apelación, Anejo IX, págs. 26-27.

reportadas en un talonario emitido por la universidad y un estipendio de renta.[16] Al igual, adujo que se debían tomar en cuenta los balances de tres cuentas de banco de la apelada.

El 17 de mayo de 2022, la señora Crespo Claudio radicó una *Moción incluyendo documentación sobre ingresos de peticionaria y gastos del menor* en la que sometió una certificación, emitida por la universidad, que detallaba las becas aprobadas para la apelada durante el año en curso.[17] También, incluyó documentos sobre los gastos de deportes y campamento de verano del menor.

El 13 de julio de 2022, la señora Crespo Claudio presentó una *Moción sometiendo evidencia de pago de contrato de arrendamiento* en la que sometió el contrato de arrendamiento de su residencia para que se tomara en consideración al fijar la pensión alimentaria.[18]

El 10 de agosto de 2022, la apelada radicó su segunda PIPE.[19]

El 17 de agosto de 2022, la EPA celebró una vista sobre revisión de pensión alimentaria final en la que comparecieron las partes, representadas por sus abogados.[20]

El 23 de agosto de 2022, la señora Crespo Claudio presentó una *Moción en cumplimiento de acuerdos durante vista de pensión alimentaria* en la que solicitó al TPI que tomara en cuenta como ingreso del señor De La Cruz López unos $750 que recibía mensualmente por concepto de canon de arrendamiento de una propiedad residencial.[21] A esos efectos, solicitó la inspección de ciertos estados de cuenta del apelante.

El 26 de agosto de 2022, el señor De La Cruz López radicó una *Réplica a moción en cumplimiento de acuerdos durante vista de*

---

[16] Íd., Anejo X, págs. 30-31.
[17] Apéndice de la *Oposición a Apelación*, Anejo IX, págs. 27-30.
[18] Íd., Anejo X, págs. 31-32.
[19] Apéndice de la apelación, Anejo XI, pág. 32-36.
[20] Íd., Anejo V, pág. 11
[21] Apéndice de la *Oposición a Apelación*, Anejo XI, págs. 45-46.

*pensión alimentaria* en la que se opuso a la revisión de sus estados de cuenta bancarios, pero aceptó la cifra recibida como canon de arrendamiento.[22]

El 29 de agosto de 2022, la señora Crespo Claudio presentó una *Oposición a réplica del promovido sobre ingresos* en la que solicitó que se tomaran en cuenta ciertos créditos de las cuentas bancarias del apelante cuando no estuviera disponible otra evidencia del canon de arrendamiento.[23]

El 30 de agosto de 2022, el señor De La Cruz López radicó una *Dúplica a Oposición a Réplica del promovido sobre ingresos* en la que reiteró que la petición de la apelada redundaría en una duplicación errónea en el conteo de los ingresos por renta.[24]

El 1 de septiembre de 2022, el TPI emitió una *Orden* en la que refirió las anteriores mociones a la EPA.[25]

El 25 de abril de 2023, el TPI llevó a cabo una vista cuyas incidencias quedaron recogidas en una *Minuta.*[26] Entre varios asuntos, el foro primario le ordenó a la EPA emitir el informe final sobre pensión alimentaria y señaló una vista de seguimiento para el 8 de diciembre de 2023.

El 14 de junio de 2023, la señora Crespo Claudio presentó una *Moción solicitando resolución sobre pensión alimentaria* en la que solicitó que el TPI ordenara a la EPA emitir su informe.[27] Según alegó, habían transcurrido casi 10 meses desde la vista de pensión alimentaria, durante los cuales el apelante estaba pagando la pensión alimentaria provisional, una cantidad menor a la que le correspondía según la información vertida en la vista. Planteó que

---

[22] Íd., Anejo XII, págs. 47-49.
[23] Íd., Anejo XIII, págs. 50-51.
[24] Íd., Anejo XIV, págs. 52-53.
[25] Íd., Anejo XV, págs. 56.
[26] Íd., Anejo XVI, págs. 59-62.
[27] Íd., Anejo XVII, págs. 63-64.

esa situación representaba un menoscabo de su capacidad económica.

El 20 de junio de 2023, el TPI emitió una *Orden* en la que le ordenó a la EPA someter su informe en un término de diez (10) días.[28]

El 4 de agosto de 2023, la señora Crespo Claudio presentó una *Urgente moción solicitando resolución sobre pensión alimentaria final* en la que reiteró su petición ante el incumplimiento de la EPA con el término concedido por el TPI para presentar su informe.[29]

El 9 de agosto de 2023, el TPI emitió una *Orden* en la que ordenó a la EPA a presentar su informe en un término perentorio de diez (10) días.[30]

**Un año después de la última vista de pensión alimentaria**, el 22 de agosto de 2023, la EPA emitió un *Informe de Pensión Alimentaria* en el que recomendó que se ordenara al apelante a pagar una pensión alimentaria de $1,154.75 mensuales, a razón de $577.00 quincenales.[31] En adición, incluyó que, del 3 de marzo de 2021 al 31 de julio de 2023, el apelante debió pagar $33,487.75 por concepto de pensión alimentaria retroactiva, cantidad que estaría sujeta al crédito de cualquier aportación que haya hecho durante ese periodo de tiempo.

Según el informe, la EPA imputó el ingreso mensual de la señora Crespo Claudio en $3,321.33 y el del señor De La Cruz López en $3,021.

Para calcular el ingreso de la apelada, quien es estudiante a nivel doctoral en Estados Unidos y recibe ciertos fondos para sufragar sus estudios, consignó que utilizó los siguientes datos:

1. La apelada recibirá $28,000 el año en que redacte su tesis.

---

[28] Íd., Anejo XVIII, pág. 65.
[29] Íd., Anejo XX, págs. 67-68.
[30] Íd., Anejo XXI, pág. 69.
[31] Apéndice de la apelación, Anejo V, págs. 11-15.

2. Al momento, recibe $6,000 depositados el segundo semestre por concepto de la Beca Leeman; $30,000, divididos en dos semestres, por concepto de la Beca Sheldon; y una Beca Winkler, cuya cantidad fluctúa por año, pero que ha recibido todos los años de estudio. Las becas Leeman y Sheldon son para investigación en varios países, pudiéndose utilizar únicamente para estadía, pasajes aéreos, libros, plan médico internacional, fotocopias y traslados. Por ello, para usar los fondos, la apelada está obligada a justificar la utilización, realizar informe de gastos y registrarlos en varias plataformas.

3. Respecto a la Beca Winkler, la apelada debe tener "buen standing", estar soltera y presentar un presupuesto de sus gastos y los del menor. En el 2019, recibió $20,000; en el 2020, $23,550; en el 2021, $26,200; y en el 2022, $29,000.

4. La apelada recibió durante el 2021 un estipendio por desempeñarse como asistente de profesor en dos pagos que totalizan $13,606, lo cual representa $1,133.83 mensuales.

5. Además, la apelada posee: una cuenta de ahorro para la educación universitaria del menor; una cuenta de cheque en la que recibe las becas y el estipendio por concepto de su trabajo como asistente de profesor; y otra cuenta de ahorro. Sobre esta última, la EPA no recibió detalles y, por ello, no estuvo en posición de determinar su balance.

6. Basado en estos hechos, para establecer el ingreso de la apelada, consideró el promedio mensual recibido por concepto de la Beca Wrinkler, $2,187.50 y el promedio mensual recibido por concepto del estipendio, $1,133.83. La suma de estas cantidades es $3,321.33, el ingreso de la señora Crespo Claudio.

Entretanto, para calcular el ingreso del apelante, quien es arquitecto y se desempeña como coordinador de proyectos, la EPA consideró los siguientes datos:

a. El apelante recibe un salario mensual de $2,249.

b. El apelante recibió un salario mensual de $2,293 en un empleo anterior, el cual ostentó de febrero de 2020 a octubre de 2021.

c. El apelante recibió $750 por concepto del arrendamiento de una residencia de su propiedad.

d. El apelante recibe con frecuencia depósitos de aproximadamente $150, los cuales utiliza para diligencias que requiere su madre.

e. Basado en estos hechos, para establecer el ingreso del apelante, utilizó el promedio mensual de ingresos generados en los dos empleos, $2,271; y el canon de arrendamiento mensual, $750. La suma de estas cantidades es $3,021, el ingreso del señor De La Cruz López.

En cuanto a los gastos de cada uno, la EPA tomó en cuenta que: (a) la universidad de la apelada cubre los costos de matrícula; (b) la apelada paga el plan médico dental; (c) con la Beca Winkler, la apelada sufraga los costos de vivienda, los cuales ascienden a

$2,388 mensuales; y (d) el apelante alegó que paga $500 de renta, pero la EPA no le otorgó credibilidad a su testimonio.

El 23 de agosto de 2023, el TPI emitió la *Resolución sobre Pensión Alimentaria* apelada en la que acogió el *Informe de Pensión Alimentaria* emitido por la EPA y fijó en $1,154.75 el pago mensual de pensión alimentaria que deberá pagar el señor De La Cruz López directamente a la señora Crespo Claudio.[32] También, resolvió que desde el 3 de marzo de 2021 al 31 de julio de 2023 el apelante debe haber pagado $33,487.75 por concepto de pensión alimentaria retroactiva, condicionado a que se acredite cualquier aportación que el apelante haya realizado durante dicho término.

El 9 de septiembre de 2023, el señor De La Cruz López radicó una *Moción de reconsideración de resolución sobre pensión alimentaria* en la que solicitó al TPI que reconsiderara su dictamen.[33] Basó su petición en que la EPA cometió varios errores de hecho y de derecho en el *Informe de Pensión Alimentaria* emitido. Específicamente, adujo que la EPA calculó erróneamente el ingreso de la apelada.

El 29 de septiembre de 2023, la señora Crespo Claudio presentó una *Oposición a solicitud de reconsideración* en la que solicitó que se declarara Sin Lugar la solicitud de reconsideración.[34]

El 4 de octubre de 2023, el señor De La Cruz López radicó una *Réplica a Oposición de reconsideración.*[35]

El 17 de octubre de 2023, el TPI refirió las mociones a la EPA.[36]

---

[32] Notificada y archivada el 25 de agosto de 2023. Íd., págs. 9-10.
[33] Íd., Anejo VI, págs. 17-22.
[34] Apéndice de la *Oposición a Apelación*, Anejo XXIII, págs. 71-90.
[35] Apéndice de la apelación, Anejo VIII, págs. 24-25
[36] Apéndice de la *Oposición a Apelación*, Anejo XXIV, pág. 92.

El 10 de noviembre de 2023, la EPA emitió un *Informe sobre referido a la EPA* en la que recomendó declarar No Ha Lugar la reconsideración.[37]

El 4 de diciembre de 2023, el TPI emitió una *Resolución* en la que adoptó la recomendación de la EPA y declaró No Ha Lugar la reconsideración promovida por el apelante.[38]

Inconforme, el señor De La Cruz López radicó el recurso de epígrafe y le imputó al TPI la comisión de los siguientes errores:

> PRIMER ERROR: Erró el Tribunal de Primera Instancia al establecer una pensión alimentaria violando el derecho al debido proceso de ley del peticionario, al tardarse la EPA, injustificadamente, más de un año en emitir un informe y recomendación, creando una situación de atrasos que ponen en riesgo los recursos y la libertad misma del peticionario.
>
> SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al establecer una pensión alimentaria sin tomar en consideración todos los ingresos atribuibles a la promovida.

En esencia, planteó que: (1) la dilación de más de un año de la EPA en emitir el *Informe de Pensión Alimentaria* fue injustificada y laceró los derechos fundamentales del apelante; y (2) la pensión fijada no era razonable. A su entender, existía una discrepancia injustificada entre el ingreso que la EPA consideró al establecer la pensión provisional y el ingreso que estimó para calcular la pensión final. Esto se debió, según arguyó, a que la EPA: (1) no tomó en consideración la totalidad del expediente, ni revisó la grabación de la vista; (2) excluyó erróneamente la Beca Winkler, la Beca Sheldon y otras sin razón en derecho para ello, bajo la única premisa de que no se habían concedido, cuando se probó que la apelada las recibió y no las excluyó de su PIPE; y (3) no recibió evidencia de que la apelada devolvió los fondos. Por último, alegó que resultaban sospechosos los balances de tres de las cuentas bancarias de la

---

[37] Apéndice de la apelación, Anejo II, pág. 2.
[38] Notificada y archivada en autos el 7 de diciembre de 2023. Íd., Anejo I, pág. 1.

señora Crespo Claudio y que, de todas formas, debían ser considerados en el cálculo de su ingreso.

El 7 de febrero de 2024, la señora Crespo Claudio presentó una *Oposición a apelación* en la que, en suma, argumentó que la EPA y el TPI no incurrieron en error, prejuicio, parcialidad o pasión al evaluar la evidencia desfilada y, en consecuencia, solicitó que confirmemos la *Resolución sobre Pensión Alimentaria* apelada. Su posición es, principalmente, que la pensión alimentaria final recomendada por la EPA y aceptada por el TPI fue el producto de la implantación correcta de la ley, las guías y la jurisprudencia, de acuerdo con la prueba presentada.

Más específicamente, la apelada dedicó su escrito a refutar los planteamientos del señor De La Cruz López. Respecto a la alegación de que la dilación actuó en perjuicio del apelante, esbozó la apelada fue la única parte que presentó mociones en solicitud de órdenes a la EPA para que emitiera su informe final. En contraste, adujo que, durante ese tiempo, el apelante se quedó de brazos cruzados y no argumentó violación alguna al debido proceso de ley. Según expuso, en el presente recurso no especificó qué derechos se vieron afectados. También, alegó que el propio apelante provocó parte del retraso en la conclusión del caso. A esto, añadió que, en todo caso, fue la apelada la que vio afectados sus derechos, toda vez que esperó por más de un año la fijación de la pensión alimentaria final, asumiendo una carga mayor de la que correspondía, así como mayores gastos de representación legal.

Además, respecto a la discrepancia entre los ingresos calculados por la EPA para la pensión provisional y los evaluados para la pensión final, adujo que la diferencia se debió a que la EPA calculó correctamente los ingresos actualizados de la apelada. Planteó que, durante el proceso, radicó seis documentos que demostraban los cambios a los que estuvo sujeto su ingreso debido

a sus estudios. Más aún, arguyó que la EPA, dentro de su discreción, diferenció los fondos recibidos por concepto de la Beca Winkler y el estipendio, los cuales consideró ingresos, de aquellos percibidos bajo las Becas Leeman y Sheldon, los cuales consideró reembolso de gastos, rechazando incluirlos como ingresos. Es su contención que la EPA llegó a estas conclusiones tras examinar la prueba documental y escuchar la prueba testifical desfilada. Ante ello, esbozó que el señor De La Cruz López no presentó la grabación de la vista, tampoco sometió la transcripción de la prueba oral (TPO) ni ofreció evidencia suficiente para variar la apreciación de la prueba realizada por el foro primario.

Por último, defendió las conclusiones del TPI en cuanto a las tres cuentas bancarias que posee. En primer lugar, expresó que la cuenta con un balance de $110,000 (Cuenta A) corresponde a una herencia, lo cual reconoce el propio apelante, y argumentó que, por ese carácter, la jurisprudencia requiere que dicha cifra no se impute como ingreso. En segundo lugar, alegó que la cuenta con balance de $57,000 (Cuenta B) es una cuenta de retiro 401(k), cuyos fondos fueron acumulados mientras trabajaba por ocho años en Estados Unidos y cuya utilización está limitada, sujeto a penalidades. Según arguyó, el foro primario tenía discreción para considerar si esos bienes eran ingresos y, en el ejercicio de ese poder, concluyó que no lo eran. En tercer lugar, adujo que la cuenta con balance de $13,000 (Cuenta C) es una cuenta de ahorro para la educación universitaria del menor o por una emergencia y, por ello, arguyó que no estaría en el interés óptimo del menor que esos fondos fueran agotados para su sustento inmediato con el único propósito de disminuir la aportación del padre.

El 14 de febrero de 2024, la apelada radicó una *Moción solicitando desestimación por incumplimiento* en la que solicitó la desestimación de la apelación porque el mismo se le notificó después

de transcurrido el término dispuesto para la presentación del recurso, en incumplimiento de la Regla 15 del Reglamento del Tribunal de Apelaciones, *supra.*

El 15 de febrero de 2024, emitimos una *Resolución* en la que le concedimos al señor De La Cruz López hasta el 20 de febrero de 2024 para exponer su posición sobre la desestimación solicitada. Empero, dicho término transcurrió sin la comparecencia del apelante.

**III.**

**A.**

En Puerto Rico, los menores tienen un derecho fundamental a recibir alimentos, el cual emana de la cláusula constitucional del derecho a la vida consagrada en el Art. II, Sección 7 de nuestra Constitución. Art. II, Sec. 7, **Const. ELA**, LPRA, Tomo 1; *Díaz Rodríguez v. García Neris,* 208 DPR 706, 717 (2022); *De León Ramos v. Navarro Acevedo,* 195 DPR 157, 169 (2016); *Fonseca Zayas v. Rodríguez Meléndez,* 180 DPR 623, 632 (2011). Por esa razón, los casos de alimentos están revestidos del más alto interés público. *Díaz Rodríguez v. García Neris,* supra. Estatutariamente, se reconoce el derecho a recibir alimentos como un derecho personalísimo, imprescriptible, continuo, indivisible y que no está sujeto a transacción, renuncia, gravamen, embargo o compensación. Art. 657 del Código Civil de Puerto Rico de 2020 (Código Civil), 31 LPRA sec. 7535.

Nuestro Código Civil consigna la obligación de los progenitores de alimentar a los hijos sujetos a su patria potestad. Véase el Art. 590 del Código Civil, 31 LPRA sec. 7242. Este es un deber que se ha reconocido como inherente a la paternidad. *De León Ramos v. Navarro Acevedo,* supra.

Cabe destacar varios de los preceptos principales que estatuye nuestro Código Civil sobre la pensión alimentaria. En primer lugar,

se define como alimentos todo lo "[...] indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". Art. 653 del Código Civil, 31 LPRA sec. 7531. Ahora bien, cuando el alimentista es menor de edad, los alimentos incluyen su educación, las atenciones de previsión según los usos y circunstancias de su entorno familiar y social, y los gastos extraordinarios para la atención de sus condiciones especiales. Íd.

En segundo lugar, en el caso específico de los progenitores, se establece que ambos responden solidariamente por los alimentos de sus hijos y, en caso de que uno incumpla su obligación, el otro puede iniciar la acción de cobro a nombre del alimentista. Art. 661 del Código Civil, 31 LPRA sec. 7544. Si la obligación recae en dos personas, el pago debe repartirse entre ellas en cantidad proporcional a sus respectivos caudales. Art. 663 del Código Civil, 31 LPRA sec. 7546. Empero, en el caso particular de los menores de edad, la cuantía adeudada se fijará siguiendo los criterios dispuestos en la ley especial complementaria. Art. 666 del Código Civil, 31 LPRA sec. 7562. A esos efectos, la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, (Ley Núm. 5-1986) 8 LPRA secs. 501 *et seq*, regula el procedimiento y los criterios para fijar la cuantía de obligación alimentaria de los progenitores. Más adelante, pormenorizaremos las disposiciones más relevantes de dicho estatuto.

En tercer lugar, el Código Civil establece, respecto a la modificación de la obligación alimentaria, que la cuantía de los alimentos se aumentará o reducirá proporcionalmente según fluctúen las necesidades del alimentista y los recursos del alimentante. Art. 671 del Código Civil, 31 LPRA sec. 7567. Si se trata de un menor de edad, entonces la modificación corresponde

únicamente cuando median cambios sustanciales que alteran significativamente las necesidades del alimentista y los recursos del alimentante. Íd.

**B.**

De lo anterior se puede colegir que la determinación sobre la cuantía de alimentos se guía por un principio de proporcionalidad entre los recursos del alimentante y las necesidades del que los recibe. ***Llorens Becerra v. Mora Monteserín****,* 178 DPR 1003, 1016 (2010). Así pues, "[c]omo parte del proceso evaluativo, es necesario determinar tanto la capacidad económica del padre o la madre no custodio, como la del padre o de la madre custodio, toda vez que ambos están obligados a prestar alimentos de forma proporcional a sus recursos". ***De León Ramos v. Navarro Acevedo****, supra,* pág. 171, citando a su vez ***Llorens Becerra v. Mora Monteserín****, supra,* pág. 1018.

En aras de regular la obligación alimentaria, como se mencionó anteriormente, se promulgó la Ley Núm. 5-1986, *supra,* la ley especial complementaria que dispone los criterios para la fijación de las pensiones alimentarias. Entre sus disposiciones, el Art. 2 de la Ley Núm. 5-1986, *supra* sec. 501, establece las siguientes definiciones, destacadas por su pertinencia:

> [...]
> 10. Cuenta — Todo tipo de cuentas de bancos o instituciones financieras, reguladas por el Comisionado de Instituciones Financieras de Puerto Rico y por las leyes federales que rigen sobre la materia, incluyendo cheques, depósitos, ahorros, fondos mutuos, pensiones, acciones, bonos, certificados de depósitos, reserva de créditos, líneas de crédito, tarjeta de crédito o débito y similares.
> [...]
> 16. Error de hecho — Significa, en el contexto de una revisión de una orden del Administrador ante el Juez Administrativo, un error en la determinación de la cantidad del pago corriente o atrasado de la obligación de proveer alimentos, o en la identidad del sujeto que ha sido identificado legalmente como alimentante.
> [...]
> 19. Ingreso neto — Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las

deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente.

20. Ingresos — Comprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico; del Gobierno de Estados Unidos de América, el Distrito de Columbia; las Islas Vírgenes de Estados Unidos de América; o cualquier territorio o posesión sujeta a la jurisdicción de Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables. Además, de cualquier estado de Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad. Asimismo, contempla los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.

[…]

A su vez, el Art. 3 de la Ley Núm. 5-1986, *supra* sec. 502, establece que las disposiciones de dicho estatuto deberán interpretarse liberalmente a favor de los mejores intereses del menor.

Por otra parte, el Art. 13 de la Ley Núm. 5-1986, *supra* sec. 512, establece el procedimiento judicial mediante el que se fijarán las pensiones, sujeto a que los casos sean evaluados por los EPA. El EPA "[…] hará determinaciones de hecho y conclusiones de derecho y recomendará remedios a un juez del Tribunal de Primera Instancia, Sala Superior, en cualquier procedimiento referente a pensiones […]". Íd. Entre las facultades del EPA se encuentran tomar juramentos, dirigir y permitir el descubrimiento de prueba, recibir testimonios y cualquier otra evidencia para establecer un récord del caso. Íd. Así, recibida y evaluada la evidencia, tiene la

autoridad para "[…] rendir un informe al tribunal que contenga las determinaciones de hechos, conclusiones de derecho y sus recomendaciones relacionadas a fijar, modificar y hacer efectivas las órdenes de pensión alimenticia [sic] y establecer la filiación". Íd. De lo anterior se desprende que, para fines de fijar la fianza, el EPA evalúa la prueba y toda evidencia pertinente a los ingresos y gastos de los alimentantes y las necesidades del menor. En base a estas, tiene discreción para formular determinaciones de hechos y conclusiones de derecho sobre las que basará su recomendación de pensión alimentaria al TPI, en conformidad con la legislación y reglamentación aplicable.

En estos procedimientos judiciales, "el descubrimiento de prueba sobre la situación económica del alimentante y alimentista será compulsorio". Art. 16 de la Ley Núm. 5-1986, *supra* sec. 515. Asimismo, también es compulsoria la presentación de copia certificada de la planilla de contribución sobre ingresos y certificación patronal del sueldo o salario, si lo solicita cualquiera de las partes. Íd. A estos fines, se contempla la preparación de un formulario que sirva de guía sobre la "información mínima requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante". Íd. A este formulario se le conoce como la PIPE y debe ser completado y juramentado con toda la información requerida, radicarse en la secretaría del TPI y notificarse a la otra parte con antelación a la vista de pensión alimentaria. Íd.; véase la nota al calce 1 en ***Rodríguez Rosado v. Zayas Martínez***, 133 DPR 406, 407 (1993).

Por último, la Ley Núm. 5-1986, *supra*, le ordenó al Administrador de la Administración para el Sustento de Menores (ASUME) preparar guías mandatorias para determinar y modificar las pensiones alimentarias para menores de edad, las cuales

deberán estar basadas en los ingresos, ganancias y otra evidencia que refleje la capacidad de pago tanto de la persona custodia como la no custodia. Art. 19 de la Ley Núm. 5-1986, *supra* sec. 518. En cuanto a la determinación de los recursos económicos de los obligados a alimentar, se dispone que se tomará en consideración: (1) su ingreso neto ordinario; (2) su capital o patrimonio total; (3) su historial laboral; (4) evidencia fehaciente de búsqueda de empleo; (5) escolaridad; (6) destrezas; (7) edad; y (8) salud. Íd. En la misma vena, pronosticando que utilizar guías mandatorias podría resultar en situaciones injustas o inadecuadas, el Artículo 19 de la Ley Núm. 5-1986, *supra*, también facultó a ASUME y al TPI a determinar la pensión tomando en consideración:

> 1. Los recursos económicos de los padres y del menor;
> 2. la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;
> 3. el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;
> 4. las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente; y
> 5. las contribuciones no monetarias de cada padre al cuidado y bienestar del menor. Íd.

Al utilizarse este método alterno, los recursos económicos se calcularán tomando en cuenta el ingreso neto ordinario y el capital o patrimonio total del alimentante. ***Fonseca Zayas v. Rodríguez Meléndez,*** *supra*, pág. 638.

En cumplimiento del mandato de la Ley Núm. 5-1986, *supra*, ASUME promulgó las Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico (Guías Mandatorias), Reglamento Núm. 8529 de 30 de octubre de 2014. Entre sus disposiciones, el Art. 7 de las Guías Mandatorias define siete tipos de ingresos, a saber:

> [...]
> 16. Ingresos: Comprenden cualquier ganancia monetaria, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o funcionaria o empleado o empleada del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, del Distrito de Columbia, de las Islas

Vírgenes de los Estados Unidos de América, o de cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades o país extranjero en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad o corporación, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, compensaciones corno contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba una persona de cualquier persona natural o jurídica.

17. Ingreso bruto: Se refiere a la totalidad de los ingresos con los que cuentan la persona custodia y la persona no custodia con anterioridad a descontarse las deducciones mandatorias y las deducciones aceptadas.

18. Ingreso imputado: Ingreso que el juzgador o la juzgadora le atribuye a la persona custodia o a la persona no custodia que se tomará en consideración al momento de determinar la pensión alimentaria para beneficio de un o una menor de edad.

19. Ingreso neto: Aquellos ingresos disponibles al aumentante, luego de las deducciones por concepto de contribuciones sobre ingreso, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el o la alimentista sea beneficiario o beneficiaria de estos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente.

20. Ingreso neto combinado: Es la suma del ingreso neto mensual de la persona custodia y el de la persona no custodia y, cuando ello aplique, el ingreso neto mensual de sus respectivos cónyuges.

21. Ingreso no recurrente: Ingreso que cualquiera de las personas recibe una vez sin la expectativa de volver a recibirlo.

22. Ingreso periódico no frecuente: Ingreso que cualquiera de las personas recibe o recibirá periódicamente, pero con una frecuencia que excede los treinta y seis (36) meses.

[…] Reglamento Núm. 8529 de 30 de octubre de 2014, Art. 7, págs. 6-8.

Por un lado, el inciso (e) del Artículo 9 de las Guías Mandatorias prescribe que, cuando las personas reciban ingresos no recurrentes, el juzgador los tomará en consideración para el año en el que la persona los recibió. Reglamento Núm. 8529 de 30 de octubre de 2014, Art. 9, págs. 14-15. En estos casos, el juzgador

deberá computar una pensión alimentaria para el año en que se considerarán los ingresos no recurrentes y otra pensión a partir del momento en el que los ingresos de la persona no incluirán el ingreso no recurrente. Íd.

Por el otro, el Art. 10 establece que se podrá imputar ingresos a la persona custodia o no custodia cuando existan indicios de que su ingreso es mayor al informado, cuando trabaje a tiempo parcial, reciba un ingreso mensual bruto menor al salario mínimo federal, o esté desempleada. Reglamento Núm. 8529 de 30 de octubre de 2014, Art. 10, pág. 15. A su vez, el Art. 12 de las Guías Mandatorias dispone, respecto a la cantidad de ingreso que se imputará en cada caso, lo siguiente:

> (4) En los casos en los que la persona custodia o la persona no custodia se encuentre estudiando a nivel universitario, el juzgador o la juzgadora tomará en consideración lo que resulte mayor entre el ingreso mensual que la persona obtenga de cualquier trabajo u oficio al cual se dedique conforme con las disposiciones federales o estatales sobre salario para dicho trabajo u oficio o el salario mínimo federal prevaleciente en Puerto Rico a base de no menos de treinta (30) horas semanales. El juzgador o juzgadora deberá tomar en consideración los siguientes factores al momento de determinar si procede aplicar esta regla y no la regla general en cuanto a la imputación de ingresos: (a) si la persona custodia o no custodia es aún menor de edad, (b) si la persona ya cuenta con un grado académico o título profesional, (c) si la persona ha decidido reducir su carga de trabajo para obtener determinado grado académico; (d) la carga académica que de conformidad con el programa de clase la persona custodia o la persona no custodia tiene como estudiante; (e) si la persona puede estudiar durante un horario nocturno; (f) la prueba que demuestre que la persona no puede acceder a un trabajo a tiempo completo por la carga académica con la que debe cumplir; (g) la prueba en cuanto a que la persona ha realizado la búsqueda de empleo pertinente para poder acceder a un trabajo a tiempo completo y cumplir con su responsabilidad como estudiante, y (h) el término que le resta para obtener el grado o título. Reglamento Núm. 8529 de 30 de octubre de 2014, Art. 12, págs. 19-20.

Ahora bien, en los casos que no aplique la imputación, para obtener el ingreso neto mensual – base para la fijación de la pensión alimentaria – el Art. 13 de las Guías Mandatorias faculta el cómputo del ingreso neto mensual, el cual se obtiene restando las deducciones mandatorias y las aceptadas al ingreso bruto anual;

ese resultado se divide entre los doce (12) meses del año. Reglamento Núm. 8529 de 30 de octubre de 2014, Art. 13, pág. 20. En cuanto a deducciones por concepto de plan de retiro, el referido artículo obliga a los Examinadores a contemplar si el alimentista es beneficiario del mismo, tomando en cuenta los siguientes factores para determinar la cantidad a deducir: (1) la fecha en que las parte solicitó la pensión alimentaria; (2) la fecha en que la persona ingresó en el plan de retiro; (3) las cantidades que la parte aportaba; (4) quiénes han sido o son beneficiarios del plan; y (5) la fecha desde la cual el alimentista es beneficiario. Íd.

Por último, para determinar la proporción que le corresponde a cada una de las partes, el Artículo 16 de las Guías Mandatorias requiere que se divida el ingreso neto mensual de cada una por el ingreso neto mensual combinado de ambas partes. Reglamento Núm. 8529 de 30 de octubre de 2014, Art. 16, pág. 24. El resultado porcentual será la proporción en la que cada parte deberá responder por los alimentos en beneficio del menor. Íd.

### C.

En los pasados años, nuestro Tribunal Supremo ha tenido la oportunidad de resolver si ciertas partidas, bienes o fondos constituyen ingreso al amparo de la Ley Núm. 5-1986, *supra*, y las Guías Mandatorias. En ***Llorens Becerra v. Mora Monteserín,*** supra, examinó si la capitalización producto del refinanciamiento de un préstamo con garantía hipotecaria constituía ingreso y concluyó que no. En ***Fonseca Zayas v. Rodríguez Meléndez,*** supra, evaluó si los bienes que un alimentante adquiere por herencia deben considerarse como ingreso y resolvió que no. En ***Serrano Maldonado v. Molina Figueroa,*** 201 DPR 685 (2019), analizó si una pensión por incapacidad de un veterano debía entenderse como ingreso y determinó que sí, estimando que su inclusión no contravenía legislación federal alguna. En ***Franco Resto v. Rivera***

*Aponte,* 187 DPR 137 (2012), interpretó que el dinero recibido como premio de la Lotería Tradicional de Puerto Rico y el pago por dieta y millaje recibido por el alimentante de parte de su patrono constituían ingresos.

Para llegar a las anteriores conclusiones, nuestro más alto foro ha delineado diversas pautas a seguir al momento de evaluar qué constituye ingreso al amparo de la Ley Núm. 5-1986, *supra*, y las Guías Mandatorias. Entre ellas que, aunque el concepto ingreso es abarcador y requiere una interpretación amplia a favor del derecho de recibir alimentos, las "inclusiones al amparo de este concepto deben, a su vez, representar ganancias, beneficios, rendimiento o frutos con los que realmente cuente el alimentante, de forma tal que se establezca una pensión justa y razonable". (Énfasis nuestro). *Llorens Becerra v. Mora Monteserín,* supra, pág. 1025. Asimismo, la inclusión de ciertas partidas deberá responder al principio de proporcionalidad. Íd., pág. 1025. También, algunas circunstancias – e. g. las obligaciones prestatarias del alimentante – pueden ser factores al fijar una pensión si son indicativas de que el ingreso o la capacidad económica del obligado son superiores a lo informado. Íd., pág. 1026. Por último, la jurisprudencia también es clara en que la designación de una cuantía como parte de los ingresos de los obligados no implica que no sea posible demostrar lo contrario. *Franco Resto v. Rivera Aponte,* supra, pág. 157. Este es el caso de cantidades recibidas por concepto de reembolso de gastos relacionados con el empleo que le corresponden al patrono. Íd. En esas instancias, no deberá catalogarse como ingreso que enriquece al alimentante. Íd.

## D.

Como regla general, los foros apelativos no debemos intervenir con las determinaciones de hechos de los tribunales de primera instancia, su apreciación sobre la credibilidad de los testigos y el

valor probatorio conferido a la prueba presentada en sala. ***González Rivera v. Robles Laracuente***, 203 DPR 645, 665 (2019) (Resolución), Opinión de Conformidad emitida por el Juez Asociado señor Feliberti Cintrón; ***Dávila Nieves v. Meléndez Marín***, 187 DPR 750, 770-771 (2013); ***S.L.G. Rivera Carrasquillo v. A.A.A***., 177 DPR 345, 356 (2009). Ello, salvo que se demuestre que el Tribunal de Primera Instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto. Íd. Esta norma de deferencia judicial está apoyada en que la tarea de apreciación de la prueba testifical está llena de elementos subjetivos y es el foro de primera instancia quien está en mejor posición para aquilatarla. ***González Rivera v. Robles Laracuente,*** supra; ***Muñiz Noriega v. Muñiz Bonet***, 177 DPR 967, 986-987 (2010); ***Dávila Nieves v. Meléndez Marín,*** supra, pág. 771; ***Argüello v. Argüello***, 155 DPR 62 (2001). Los foros apelativos solo contamos con *"récords mudos e inexpresivos"*. ***González Rivera v. Robles Laracuente***, supra; ***Trinidad v. Chade***, 153 DPR 280, 291 (2001) citando a ***Pérez Cruz v. Hosp. La Concepción***, 115 DPR 721, 728 (1984). Por lo cual, las decisiones del tribunal de primera instancia están revestidas de una presunción de corrección. ***López García v. López García***, 200 DPR 50 (2018); ***Vargas Cobián v. González Rodríguez***, 149 DPR 859 (1999).

A tenor con ello, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Sólo podremos intervenir con estas conclusiones cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba. ***González Hernández v. González Hernández***, 181 DPR 746 (2011). Por tal razón, se ha establecido que, en ausencia de

prejuicio, parcialidad, error manifiesto o abuso de discreción, de ordinario, el pronunciamiento del tribunal de primera instancia será sostenido en toda su extensión por el tribunal intermedio. ***Sucn. Rosado v. Acevedo Marrero***, 196 DPR 884 (2016); ***Trans-Oceanic Life Ins. v. Oracle Corp.***, 184 DPR 689 (2012).

Al respecto, "[u]n tribunal puede incurrir en abuso de discreción cuando el juez ignora sin fundamento algún hecho material; cuando el juez le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando este, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable." ***Citibank et al. v. ACBI et al.***, 200 DPR 724 (2018); ***Pueblo v. Custodio Colón***, 192 DPR 567, 588-589 (2015). Por otra parte, el Tribunal Supremo en ***Pueblo v. Toro Martínez***, 200 DPR 834, 859 (2018), resolvió que:

> [...] un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).
>
> Por otro lado, enunciamos que se consideran claramente erróneas las conclusiones del foro revisado "si de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772, al citar a *Abudo Servera v. A.T.P.R.,* 105 DPR 728, 731 (1977).
>
> Es decir, consideramos que se incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Pueblo v. Irizarry,* 156 DPR 780, 816 (2002).
>
> Este estándar de revisión, por ejemplo, restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en que de la prueba admitida no exista base suficiente que apoye tal determinación. Íd.

Ahora bien, la alegación de una parte de que el foro primario cometió error no debe hacerse ligeramente. ***Dávila Nieves v. Meléndez Marín***, supra, pág. 775. Así pues, la parte que "señale que el juzgador actuó mediando pasión, prejuicio o parcialidad debe sustentar sus alegaciones con evidencia suficiente [...]." Íd. Es decir,

quien impugne una sentencia o resolución deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del Tribunal de Primera Instancia. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión. ***Vázquez Cintrón v. Banco Desarrollo***, 171 DPR 1, 25 (2007).

### E.

Tanto la Constitución de Puerto Rico como la Constitución de los Estados Unidos protegen a toda persona de ser privada de su libertad o propiedad sin el debido proceso de ley. Art. II, Sec. 7, **Const. ELA**, LPRA, Tomo I; Enmiendas V y XIV, **Const. EE. UU.**, LPRA, Tomo I. Entre los principios fundamentales del debido proceso de ley, la jurisprudencia federal ha incluido los siguientes requisitos: (1) notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado; y (6) que la decisión se base en el récord. ***Rivera Rodríguez & Co. v. Stowell Taylor,*** 133 DPR 881, 889 (1993).

### IV.

El caso de marras nos presenta la encomienda de determinar si procede una pensión alimentaria concedida en base a un informe emitido por la EPA, <u>un año después de celebrada la vista de pensión alimentaria</u>. También, debemos resolver si, al conceder la pensión alimentaria, se computó correctamente el ingreso de la apelada, toda vez que algunas partidas fueron consideradas y otras, descartadas.

En la *Resolución sobre Pensión Alimentaria* apelada, el TPI acogió el *Informe de Pensión Alimentaria* emitido por la EPA e impuso la pensión alimentaria recomendada. En el *Informe de Pensión Alimentaria,* la EPA detalló pormenorizadamente las bases que utilizó para calcular el ingreso mensual de cada una de las partes.

En cuanto a la apelada, sumó las cantidades percibidas por concepto de estipendio y la Beca Winkler, utilizando un promedio de los años anteriores. Específicamente, sobre esta beca, expresó:

> [...] Recibe la beca Winkler, esta beca tiene como requisitos que la persona tenga buen "standing" y debe estar soltera. Para solicitarla tiene que presentar un "Budget["] de los gastos de ella y del menor. La cantidad varía, pero la ha recibido todos los años. El primer año (2019) recibió $20,000; el segundo año (2020) recibió $23,550; el tercer año (2021), $26,200.00; el cuarto año (2022), $29,000. Con esta beca cubre el gasto de vivienda $2,388.00 mensuales.[39]

Ahora bien, excluyó del cómputo dos becas, la Leeman y la Sheldon, en consideración de las características de cada una. Sobre estas, el informe dispuso lo siguiente:

> Estas dos becas son para investigación en Chile, Argentina, Brazil y México. Únicamente puede utilizarse en estos países para cubrir estadía, pasajes aéreos y local, libros, plan médico internacional, fotocopias, traslados, museos, adapters. La Sra. Crespo tiene la obligación de justificar su uso y para ello debe registrar su uso en dos plataformas y presentar dos informes.
> El dinero que no se utilice con este propósito tiene que ser devuelto. La Sra. Crespo ya comenzó la investigación. [...][40]

Según surge claramente del expediente del caso, la señora Crespo Claudio acreditó repetidamente el carácter de estas becas a lo largo del trámite procesal del caso.[41]

Por último, respecto a las cuentas bancarias de la apelada, la EPA consignó lo siguiente:

> La Sra. Crespo tiene una cuenta para [la] educación universitaria del menor en la cual tiene ahorrado $14,000.00. Tiene una cuenta de cheque (corriente) en la que recibe becas y su estipendio cuando ejerce como asistente de profesor. En este momento tiene $18,000.00. En las preguntas dirigidas durante el contrainterrogatorio se mencionó una cuenta de ahorro abierta para depositar una herencia de su madre, $100.000.00. En relación a [e]sta última cuenta no se ofrecieron detalles adicionales y aunque hubiésemos podido considerar la figura de imputación no se nos puso en posición para ello.[42]

En desacuerdo, el señor De La Cruz López arguyó que la dilación de la EPA en emitir el *Informe de Pensión Alimentaria* fue

---

[39] Íd., Anejo V, pág. 12.
[40] Íd., págs. 11-12.
[41] Véanse Apéndice de la *Oposición a apelación*, Anejo III, págs. 6, 10; Anejo V, págs. 17-19; Anejo IX, pág. 28. Véase Apéndice de la apelación, Anejo XI, pág. 34.
[42] Íd., pág. 12.

injustificada, en detrimento de sus derechos fundamentales, y que la pensión alimentaria fijada no era razonable porque existía una discrepancia injustificada entre el ingreso de la apelada que la EPA consideró al fijar la pensión provisional en 2021 y el ingreso que estimó para calcular la pensión final.

Entretanto, en defensa de la *Resolución de Pensión Alimentaria*, la señora Crespo Claudio argumentó que la EPA calculó correctamente los ingresos de las partes, ejerciendo de forma fundamentada su poder de discreción para diferenciar entre las diversas partidas percibidas por la apelada. En esencia, planteó que el expediente demuestra cómo su ingreso fluctuaría durante sus estudios, el carácter de cada una de las becas y las características de las tres cuentas bancarias que ostenta. A su entender, el señor De La Cruz López no presentó evidencia para contradecir la apreciación de la prueba desfilada. A la misma vez, esbozó que las cuentas no debían reputarse como ingreso, puesto que correspondían a una herencia, una cuenta de ahorros para el retiro y una cuenta de ahorros para la educación universitaria del menor o para emergencias.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incidió en los errores señalados. La *Resolución sobre Pensión Alimentaria* apelada es correcta en derecho.

Respecto al primer señalamiento de error, si bien el señor De La Cruz López mencionó que sus derechos fundamentales se vieron afectados, prescindió de argumentar sobre ello y precisar cómo le afectó la demora. En esencia, no especificó qué daño le produjo la dilación. Por el contrario, limitó su argumentación a expresar que los derechos lacerados eran tan sencillos que no requerían abundar sobre ellos. También, no alegó que las circunstancias contempladas por la EPA hayan cambiado sustancialmente durante el periodo de

tiempo en que se demoró la emisión del *Informe de Pensión Alimentaria.* Tampoco consta en el expediente gestión alguna del apelante para poner fin a la dilación, lo cual contrasta con los repetidos esfuerzos de la señora Crespo Claudio. Más allá, resulta palmario que se observaron los requisitos impuestos por el debido proceso de ley, toda vez que las partes fueron notificadas del procedimiento, tuvieron amplia oportunidad de ser oídas ante un juez imparcial, presentaron e impugnaron prueba, contrainterrogaron testigos, estuvieron representados por abogados y la determinación final se basó en el récord que obra en el expediente.

En todo caso, lo que surge del expediente es lo contrario. Quien más se vio afectada por la dilación fue la señora Crespo Claudio, puesto que asumió una proporción mayor de la carga económica del sustento del menor de la correspondiente. Es decir, producto de que el señor De La Cruz López estuvo sujeto por un año a la pensión alimentaria provisional, cuyo pago es considerablemente bajo comparado con la realidad económica desfilada ante la EPA en la vista para pensión alimentaria, la apelada se vio forzada a sobrellevar una carga económica desproporcionada.

En vista de lo anterior, resulta forzoso concluir que el apelante no nos puso en posición de evaluar el primer error señalado y, más aún, que se respetaron todas las exigencias del debido proceso de ley.

Ahora bien, respecto al segundo planteamiento, el señor De La Cruz López levantó una serie de señalamientos para impugnar el cómputo que hizo la EPA del ingreso de la señora Crespo Claudio. Primero, denunció que la EPA no consideró la totalidad del expediente, ni revisó la grabación de la vista. Sin embargo, el apelante no sometió transcripción alguna de la prueba testifical

desfilada para sustentar sus imputaciones. Segundo, arguyó que la EPA excluyó las becas Winkler, Sheldon y Leeman porque no se habían concedido, pese a que quedó probado que luego las recibió. No obstante, huelga destacar que, como se desprende del expediente, la EPA incorporó la Beca Winkler en el cómputo y fundamentó las razones por las que rechazó incluir las becas Sheldon y Leeman. Tercero, esbozó que la EPA no recibió evidencia de que la apelada devolvió los fondos ni los excluyó de su PIPE. Empero, la devolución de los fondos no es una condición *sine qua non* para rechazar la consideración de estos como ingreso. A su vez, no surge del derecho aplicable que sea necesario que la señora Crespo Claudio excluyera los fondos de su PIPE. Todo lo contrario, hizo lo correcto en incluirlos y luego solicitar que se excluyeran de la consideración de su ingreso para efectos de la pensión alimentaria final.

No resulta convincente el planteamiento general del señor De La Cruz López sobre las becas que la EPA no consideró como ingreso. Adviértase que para que las becas sean consideradas ingresos deben representar ganancias, beneficios, rendimientos o frutos con los que realmente cuente el alimentante. Lo contrario provocaría establecer una pensión injusta e irrazonable, en violación del principio de proporcionalidad que permea en la Ley Núm. 5-1986, *supra*, las Guías Mandatorias y la jurisprudencia que las interpreta. Por ello, si la partida en cuestión se asemeja al reembolso de gastos relacionados con el empleo, entonces no debe catalogarse como ingreso. Tal es el caso de las Becas Leeman y Sheldon. Según surge del expediente, así como interpretaron la EPA y el TPI, los fondos que recibe la apelada por vía de estas becas no son de su libre disposición. Las becas únicamente pueden ser utilizadas para ciertos gastos incurridos por la señora Crespo Claudio en Chile, Argentina, Brazil y México en su investigación doctoral. Para

conseguir su reembolso, la apelada debe registrar, acreditar y justificar el uso de los fondos. Estas becas, a diferencia del estipendio y la Beca Winkler, no representan ganancias o beneficios con los que realmente cuenta la señora Crespo Claudio. Por el contrario, se asemejan más al reembolso de gastos relacionados con el empleo que le corresponden al patrono; en este caso, a la universidad.

Finalmente, el señor De La Cruz López argumentó que los balances de tres cuentas bancarias de la apelada eran sospechosos y debían ser considerados en el cálculo del ingreso de esta. Según la *Resolución sobre Pensión Alimentaria* apelada, la señora Crespo Claudio tenía tres cuentas de banco: una con fondos provenientes de una herencia de su madre, la Cuenta A; una de ahorro para la educación universitaria del menor, la Cuenta C; y una corriente en la que recibe las becas y el estipendio. Según reclama el señor De La Cruz, la apelada también poseía una cuenta de retiro 401(k), la Cuenta B. Es su posición que los balances de la Cuenta A, la Cuenta B y la Cuenta C debían imputársele al ingreso de la apelada. En oposición, la señora Crespo Claudio arguye que no procedía la imputación de ninguno de los balances. Es su contención que la Cuenta A no constituye ingreso por tratarse de una herencia; que considerar que el balance de la Cuenta C es ingreso o parte del caudal de la apelada representaría una desventaja para el menor; y que la EPA ejerció correctamente su discreción de no imputar los fondos guardados en la Cuenta B, cuyo balance representa los ahorros para el retiro que la apelada acumuló durante ocho (8) años de trabajo.

Ahora bien, no estamos ante uno de los casos en los que las Guías Mandatorias exigen la imputación de ingresos. La EPA tuvo ante sí todos los elementos para considerar los ingresos de ambas partes y explicó su recomendación de forma fundamentada. Más

aún, tomó en consideración los ingresos según es requerido por la Ley Núm. 5-1986, *supra,* y las Guías Mandatorias, toda vez que calculó como ingresos las ganancias derivadas de sueldo, estipendio, y los beneficios, la Beca Winkler, que percibió la señora Crespo Claudio. Así, aún si hubiese tenido elementos suficientes para considerar la Cuenta A, los fondos provenientes de dicha cuenta bancaria debían ser descartados del cómputo por tratarse de una herencia, conforme a **Fonseca Zayas v. Rodríguez Meléndez,** supra. Igualmente, resulta palmario que considerar la Cuenta C como ingreso de la apelada sería adverso al interés óptimo del menor, puesto que es una cuenta de ahorros para estudios universitarios cuyo único beneficiario es el menor. Por último, la EPA estimó correctamente que no procedía imputar el balance de la Cuenta B como ingreso de la apelada. Visto de este modo, no encontramos razón para intervenir con la deferencia que le debemos al foro primario en esta instancia.

Adviértase que el apelante no presentó una TPO, a pesar de que hace referencia a los testimonios orales desfilados en la vista ante la EPA.

Las anteriores conclusiones evitan lesionar el principio de proporcionalidad que permea en nuestra jurisdicción al fijar la pensión alimentaria. Considerar las becas excluidas y las cuentas bancarias en cuestión como ingresos con los que realmente cuenta la señora Crespo Claudio provocaría la imposición de una pensión alimentaria injusta, irrazonable y desproporcionada

Por todo lo anterior, corresponde confirmar la *Resolución sobre Pensión Alimentaria* apelada.[43]

---

[43] La moción de desestimación incoada por la apelada se torna académica, ante la determinación que hemos tomado.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Resolución sobre Pensión Alimentaria* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones